**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DON SILBERMAN, KAREN SILBERMAN and NETTI STERNKLAR, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE VETERINARY PET INSURANCE COMPANY and NATIONAL CASUALTY COMPANY, <br><br> Defendants. | Case No. |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Don Silberman, Karen Silberman, and Netti Sternklar (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned attorneys, bring this Complaint against Defendants Nationwide Mutual Insurance Company, Nationwide Veterinary Pet Insurance Company, and National Casualty Company ("Nationwide" or "Defendants"), and state as follows:

### I.  NATURE OF THE ACTION

1.     This class action is brought on behalf of Plaintiffs and similarly situated pet insurance policyholders who were deceived by Nationwide regarding the extent of its nose-to-tail coverage for pet insurance policies.

2.     Nationwide Veterinary Pet Insurance Company ("Nationwide Pet") is an insurance provider, which markets and administers pet insurance policies to consumers. The underwriters for

1

Nationwide Pet policies issued in California are Veterinary Pet Insurance Company, Columbus, Ohio; and for all other states are National Casualty Company ("National'), Columbus, Ohio.

3.      Nationwide Pet and National are subsidiaries and for all relevant purposes and at all relevant times is an agent of Nationwide Mutual Insurance Company (collectively, "Nationwide" refers to, and herein means, Nationwide Pet, National Casualty and Nationwide Mutual Insurance Company unless otherwise identified).

4.      Importantly, each affiliate of National Mutual Insurance Company promised in the "Nationwide" marketing materials to "never" drop a pet from its coverage because of age and the policies were all marketed and sold under this promise. Put another way, consumers who purchased pet insurance through Nationwide expected their coverage would continue throughout their pet's lifetime.

5.      After paying the Nationwide pet insurance monthly premiums for many years, however, consumers learned that Nationwide cancelled "Whole Pet" insurance, one of its pet insurance plans covering approximately 100,000 pets nationally. For example, Plaintiff Netti Sternklar ("Sternklar") paid the premiums for their dog Zoe for 14 years, only for Nationwide to cancel Zoe's policy in 2024 just when she needed it most—after being placed on long-term medication and regular monitoring for issues related to her kidneys, gallbladder, and heart. Zoe succumbed to her ailments for which Nationwide provided insurance coverage on or about April 2, 2025.

6.      Nationwide's bait-and-switch lured consumers into purchasing Whole Pet insurance policies based on the false promise that their policies would "never" be cancelled due to a pet's age. Then, when their senior pets needed veterinary care, Nationwide decided it would no longer offer Whole Pet, thus cancelling coverage for thousands of consumers.

2

7.      Consumers who wished to maintain pet insurance were left out in the cold, as pet insurance policies offered by all companies would not cover pre-existing medical conditions and some would not cover certain pets due to age.

8.      Had consumers known of the surprise pet insurance cancellations, they never would have signed up for Nationwide's Whole Pet insurance.

9.      Plaintiffs seek to represent a class of consumers who owned a Whole Pet policy and were deceived by Nationwide's marketing. Plaintiffs and class members have been injured by Nationwide's practices and seek actual damages, statutory damages, punitive damages, and restitution.

## II.   PARTIES

10.     Plaintiffs Don and Karen Silberman are domiciled in Sharon, Massachusetts. The Silbermans purchased the Whole Pet with Wellness Plan pet insurance policy through Nationwide for their dog Lucy, which became effective in 2016.

11.     Plaintiff Netti Sternklar is domiciled in Sharon, Massachusetts. Sternklar purchased the Whole Pet with Wellness Plan pet insurance policy through Nationwide for their dog Zoe, which became effective in 2010.

12.     Defendant Nationwide Mutal Insurance Company is a citizen of Ohio because it is incorporated in Ohio and has its principal place of business in Columbus, Ohio.

13.     Defendant Nationwide Pet is a subsidiary of Nationwide Mutual Insurance Company and offers pet health insurance for dogs, cats, birds, and exotic pets.

14.     Defendant Nationwide Pet is incorporated in Ohio and has its principal place of business in Columbus, Ohio.

15.     Defendant National is a subsidiary of Nationwide Mutual Insurance Company and is the underwriter for Nationwide Pet in all states excluding California.

16.     Defendant National is incorporated in Ohio and has its principal place of business in Columbus, Ohio.

17.     Defendants Nationwide Mutual Insurance Company, Nationwide Pet and National Casualty Company promote and sell insurance policies throughout the United States, including Massachusetts. Defendants derive substantial revenue from their business operations and the Nationwide pet policies held by consumers in Massachusetts and across the United States.

### III.    JURISDICTION AND VENUE

18.     This Court has jurisdiction over Plaintiff' claims under 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiffs) and one Defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

19.     This Court also has jurisdiction over Plaintiff's claims under 28 U.S.C. §1332(a) as this matter exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States.

20.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' cause of action occurred in this District.

### IV.    FACTUAL ALLEGATIONS

**A.    Pets suffer more diseases with age and treatment is expensive**

21.     Thanks to advances in veterinary medicine, pets are living longer than ever before. But as with people, this increased lifespan includes an increase in the types of ailments that afflict senior pets. As pets reach their senior years, there are a variety of conditions and diseases that they can face, including weight and mobility changes; osteoarthritis; kidney, heart, and liver disease; tumors and cancers; hormone disorders such as diabetes and thyroid imbalance; and many others.

22.     According to the Bureau of Labor Statistics, the price of urban veterinarian services rose by 7.9% from February 2023 to February 2024, more than double the average of all consumer items. And compared with two years ago, urban vet care is up 11%, and over the last decade it has soared by nearly 60%.[1]

23.     A 2024 USA TODAY survey shows 91% of pet owners have endured some level of financial stress because of pet care costs.[2]

24.     A 2024 Forbes Advisor poll revealed 63% of dog and cat owners said inflation had made it harder to pay an unexpected vet expense, and 42% said they would go into debt if the bill was for $999 or less.[3]

25.     The rising costs of pet health insurance push pet owners into the pet insurance market—about 6.25 million pets in North America were insured at the end of 2023[4]—to avoid a potential future situation where a pet owner is forced to put a beloved pet to sleep because of unaffordable veterinary care costs.

26.     The decision whether to buy pet insurance is a time-limited decision because most pet insurance policies exclude pre-existing conditions. Buyers often make the decision to get pet insurance as soon as a pet is born or brought home, thus ensuring they have coverage before health issues arise and their beloved pets are excluded from coverage for a pre-existing condition.

27.     Nationwide assures consumers that having pet insurance is a peace of mind with Nationwide helping to manage costs "so you can focus on getting the care your pet needs."

---

[1] *Consumer Price Index for All Urban Consumers (CPI-U)*, U.S. Bureau of Labor Statistics, https://www.bls.gov/news.release/cpi.t02.htm (last visited Mar. 7, 2025).
[2] Heidi Gollub and Jennifer Lobb, *Survey: 91% of dog owners have experienced financial stress over the cost of pet ownership*, USA Today Blueprint, https://www.usatoday.com/money/blueprint/pet-insurance/cost-of-pet-ownership-2023/ (updated Sept. 25, 2024 4:35pm).
[3] Ashley Kilroy, *How Much Does A Vet Visit Cost?*, Forbes, https://www.forbes.com/advisor/pet-care/how-much-does-vet-visit-cost/ (updated Sept. 25, 2024 4:34pm).
[4] *Pet Insurance in North America*, North American Pet Health Insurance Association, https://naphia.org/industry-data/ (last visited Mar. 7, 2025).

28.    Nationwide tells consumers that "your dog's health is our top priority."

### Protect your dog's future

Having pet insurance for your dog isn't just about covering costs—it's about peace of mind. When your dog needs medical attention, the last thing you want to worry about is a hefty vet bill. Nationwide pet insurance can help you manage the costs so you can focus on getting the care your pet needs. Whether it's an unexpected accident or a sudden illness, your dog's health is our top priority. Choosing our pet insurance coverage allows your dog to get the care they need without putting financial strain on your family.

**B.  Nationwide's Whole Pet Insurance Policy**

29.    Nationwide offers several different types of plans depending upon the coverage sought by consumers.

30.    The plan at issue is the Whole Pet Policy that Nationwide guarantees:



31.    Nationwide also offers a plan called "My Pet Protection" that covers the following:



32.    Nationwide also offers a plan called "Modular Pet Insurance Plan" that covers the following:



33.     Finally, Nationwide also provides a "Major Medical" insurance plan that covers the following:



34.     The major differences in the plans include monthly payment, annual deductibles and benefit limits.

35.     The other difference between Whole Pet and the others is the exclusion of Wellness coverage.

36.     All policies cover cancer treatments.

## What do the plans cover?

We offer nose-to-tail coverage for:

- Accidents, including broken bones, sprains, lacerations and poisoning
- Illnesses, including allergies, ear infections, arthritis and cancer, and more
- Preventive care, including checkups, vaccinations and flea/tick preventive

37.     All policies cover heart disease, arthritis, ear infections, allergies, bladder infections, and medications.

38.     The difference is cost associated with the coverages.

**C. Nationwide Pet Insurance lures consumers to sign up with promises of trustworthiness and compassion for their pets**

39.    Defendant Nationwide Pet Insurance is a subsidiary of Nationwide Mutual Insurance Company. Nationwide Pet Insurance has been around since 1982, when it was originally known as Veterinary Pet Insurance (VPI), before being acquired by Nationwide in 2009.



40.    Nationwide is regarded as the largest pet insurer in the United States with 1.2 million animals covered, offering coverage for dogs, cats, birds, reptiles, and exotic pets and is available in all 50 states and the District of Columbia.

# The Nationwide® difference

See why Nationwide is the best choice for protecting your pet's health.



41.     Nationwide markets itself as offering "***compassionate*** care for your pets," with "more pet parents trust[ing] [Nationwide] to protect their pets' health than any other pet insurance company."[5]

42.     Nationwide further boasts that "[w]ith [its] over 40 years of experience as America's top pet insurance provider," it is "dedicated to offering comprehensive, ***compassionate*** care for your pet. . . . See why Nationwide is the best choice for protecting your pet's health."[6]

---

[5] *The Nationwide® difference*, Nationwide, https://www.petinsurance.com/comparison/the-nationwide-difference/ (last visited Mar. 7, 2025) (emphasis added).
[6] *Id.* (emphasis added).

**3 things to look for**
in a pet insurance provider

**1  Trustedness**

More pet parents trust us to protect their pets' health than any other pet insurance company. We protect more than one million pets, and counting. Nationwide is the #1 choice of pet parents—every day.

**2  Value**

We all want to get the most for our money. When considering pet insurers, check to see what perks and extras they include. With Nationwide pet insurance, you get 24/7 veterinary advice, low-cost prescriptions, discounts on pet products and more.

**3  Experience**

These days, it seems like everyone offers pet insurance. But will they still be around when you need them? Nationwide has been protecting pets for four decades and is one of the largest financial services companies in the world—we're here to stay.

**D. Nationwide Pet Insurance deceptively markets its policies as being there when needed.**

43.      Nationwide's slogan is "On Your Side" and Nationwide promises to care for beloved pets, especially in times of need.

44.      Nationwide promoted its pet insurance as providing comprehensive care for pets, flexible and affordable, tailored to a pet's needs, and offering a financial safety net for pet parents.

45.      Nationwide marketed the Whole Pet with Wellness Plan as a plan that included coverage for chronic conditions and did not expire at a certain age of the pet.

Will you drop my pet from coverage because of age?

Never. To get the best coverage options, enroll your pet before age 8, and be sure to keep your policy continually in force (translation: don't let it lapse or expire). We promise not to drop your pet because of age. After all, we're pet lovers, too!

46.      Nationwide encouraged consumers to sign up "as early as possible, before chronic conditions develop or your pet needs any medical care that could put limitations on your coverage."

Why do I need insurance for my pet?

As a pet parent, you want to make sure providing the best care possible for your dog doesn't become a financial burden. Pet insurance policies reimburse you for your pet's medical care so you can focus on keeping your pet healthy—not on what it costs.

47.    Throughout the Class period, Nationwide's website has declared that it is America's oldest and largest pet insurer with "[m]ore coverage for your dog than you'll find anywhere else."

## More coverage for your dog than you'll find anywhere else

With nearly four decades of experience protecting dogs, we know that coverage counts. That's why we offer the best coverage for the best value.

48.    Nationwide promises to care for pets, especially in times of need, by providing the most comprehensive coverage.

### We give you more

From Member Perks like hand-picked savings on pet products and services, to our convenient pet health tools for advice and Rx savings, you'll get the most value from Nationwide.

Every Nationwide pet insurance member enjoys:

| **Always There Pet Care**™ | **Nationwide VetHelpline**® | **Nationwide PetRxExpress**™ |
|---|---|---|
| We're with you everywhere you go, from universal vet hospital coverage to 24/7 live pet health advice. | Take advantage of unlimited, 24/7 virtual pet care with the VetHelpline app. | All Nationwide-insured pet owners can save when filling pet prescriptions at any in-store Walmart or Sam's Club pharmacy. |
| ✓ Use your own vet | ✓ Ask about any pet health concern | ✓ Claims automatically submitted |
| ✓ Visit any specialist or ER | ✓ Advice from licensed veterinary professionals | ✓ Preferred pricing on pet medications |
| ✓ Your policy protects your pet no matter where you travel | ✓ Get expert support anytime, anywhere | ✓ Convenient locations across the country |

49.    Indeed, at the time Plaintiffs' pets were covered under the Whole Pet with Wellness Plan, Nationwide stated in the Frequently Asked Questions page on its website: "Will you drop my pet from coverage because of age? Never. . . . [E]nroll your pet before age 8, and be sure to keep your policy continually in force . . . . We **promise** not to drop your pet because of age."[7]

---

[7] Interestingly, this promise has been deleted from the website.

50.    The above representation was false. With little warning, Nationwide cancelled the Whole Pet Wellness Plan for more than 100,000 pets nationally, leaving families without the protection they were promised and with no alternatives.

51.    Nationwide claims the decision to drop the Whole Pet with Wellness Plan was based on "inflation in the cost of veterinary care and other factors." And was "not associated with the pet's ages, breed or prior claim history."[8]

52.    But as each of the Plaintiffs experienced, the cancellations were made for pets that were aging or with significant medical needs.

53.    After Nationwide cancelled the Whole Pet with Wellness Plan, a Facebook group called, "Dropped By Nationwide Pet Insurance Whole Wellness," was created for members whose older pets and pets with serious health conditions were dropped.

54.    When Nationwide cancelled thousands of pet insurance policies, anecdotal evidence of unfair cancellations began appearing across social media:

- Family with 9-year-old Doberman, dropped while 7-year-old Pomeranian was not.
- 13-year-old cat dropped by Nationwide after cancer treatment. Healthy dog not cancelled.
- Diabetic cat dropped.
- A twenty-year nationwide customer has a dog that needs to be treated weekly for lung condition dropped.
- Maltese dropped after diagnosis with liver disease.
- A family with three dogs has just one dropped after diagnosed with early-stage heart disease.
- Family with three dogs: 8-year-old shepherd, 7-year-old Husky and 2-year-old French Bulldog all covered since puppies. Two older dogs dropped by Nationwide but not the two-year-old.
- Family with two dogs: Nationwide drops the older one.
- 9-year-old golden dropped with medical issues.
- 2 ten-year-old dogs dropped.
- 3-year-old dog with significant medical issues dropped.
- 8-year-old cat with chronic pancreatitis dropped.
- 8-year-old Great Dane with medical issues dropped.
- 15-year-old dog dropped after lifetime coverage.

---

[8] https://www.usatoday.com/story/money/2024/06/17/nationwide-drops-pet-insurance-policies/74089275007/

55.    Nationwide's decision to cancel the Whole Pet with Wellness Plan, especially for loyal customers whose pets were covered by Nationwide since they were kittens/puppies, is callous and unjust because these customers were left with no protection and no alternatives.

56.    Nationwide had the ability to transfer all of these Whole Pet policies to a different Nationwide pet insurance policy.

57.    It chose profits and deceit over consumer fairness.

**E.  The Pet Insurance Industry Financial Boom**

58.    According to the Bureau of Labor and Statistics, veterinary services costs rose almost 8% between 2023 and 2024 and 11% between 2022 and 2024.

59.    According to the U.S. Pet Insurance Market Size Industry Report, 2030, the pet insurance market was valued at $4.99 billion in 2024 and is projected to grow at a CAGR of almost 21% from 2025 to 2030 to reach a market valuation of $15.87 billion.

60.    According to the North American Pet Health Insurance Association (NAPHI), the pet insurance marketplace comprises of about 30 difference insurance companies.

61.    NAPHI reports that the total premium volume has experienced double-digit increases over the past 6 years[9]:

**The total premium volume in the U.S. reached $4.7 billion at YE 2024.**

The U.S. market continues to experience double-digit increases; however, growth has slowed the past 2 years and remained steady in 2024 with a YoY variance of 21.4%.

- 21.4% increase from 2023 to 2024
- 21.4% increase from 2022 to 2023
- 24.2% increase from 2021 to 2022
- 30.4% increase from 2020 to 2021
- 27.5% increase from 2019 to 2020

---

[9] https://naphia.org/industry-data/section-1-gross-written-premium/ (last visited May 1, 2025).

62.    Since 2020, the average annual growth rate of Insured Pets is 20%.

63.    Dogs make up the majority of insured pets.

64.    Since 2020, the average annual premium for dogs has also increased from about $612.00 to $749.00 in 2024.

**F. Don and Karen Silberman's Purchase of the Whole Pet with Wellness Plan**

65.    Plaintiffs Don and Karen Silberman purchased Nationwide's Whole Pet Plan with Wellness for their dog Lucy in 2016 based on Nationwide's false and deceptive statements in its marketing and promotional materials for pet insurance.

66.    The Silbermans adopted Lucy, an emotional support pet.

67.    When the Silbermans signed up for the policy, Lucy was around four months old and in good health.

68.    The Silbermans wanted a pet insurance company that could provide lifelong care for Lucy.

69.    The Silbermans picked Nationwide because of the experience, expertise and trustworthiness it marketed, its assurances of life-long coverage as well as the extent of coverage it provided for Lucy.

70.    On March 26, 2024, Lucy was diagnosed with Hemangiosarcoma (cancer) at the age of eight.

71.    Lucy subsequently underwent surgery, chemotherapy, and various scans in treatment.

72.    Shortly after this diagnosis and long-term care plan put in place, Nationwide informed the Silberman's it was not renewing their policy and instead cancelling Lucy's coverage.

73.    The Silbermans had no options for securing alternative coverage.

74.    Nationwide canceled Lucy's coverage just when it was needed most.

75.    The Silberman's pet was certainly not Nationwide's top priority.

76.     The Silbermans have paid thousands of dollars out of pocket on veterinary care because of Nationwide's decision to cancel their plan after years of being loyal customers who consistently paid their premiums.

77.     Nationwide did not offer any alternative coverage options to the Silbermans.

78.     Even if the Silbermans wanted to stay with Nationwide under a different plan, Nationwide would consider them new customers and would not cover pre-existing conditions, like Lucy's lifesaving cancer treatments.

79.     Indeed, any medical issues Lucy developed under Nationwide's former coverage would now be considered pre-existing conditions, allowing Nationwide to deny coverage.

**E.  Netti Sternklar's Purchase of the Whole Pet with Wellness Plan**

80.     Plaintiff Netti Sternklar purchased Nationwide's Whole Pet Plan with Wellness for their dog Zoe in 2010 based upon the false and deceptive statements in Nationwide's marketing and promotional materials for pet insurance.

81.     When Sternklar signed up for the policy, Zoe had just been born and in perfect health.

82.     Sternklar picked Nationwide because of the experience, expertise and trustworthiness it marketed, its assurances of life-long coverage as well as the extent of coverage it provided for Zoe.

83.     Over fourteen years, Sternklar consistently paid Zoe's premiums, even as those premiums steadily increased.

84.     At the age of nine, just after passing Nationwide's age limit for new policies, Zoe began experiencing age related issues involving her kidney, gallbladder, and heart.

85.     Zoe's veterinarian ordered various blood tests and ultrasounds and on May 17, 2024, Zoe was placed on a long-term medication (Ursodiol) and continued regular monitoring.

86.     After learning about the new long-term medication and care plan, by letter dated May 20, 2024 (the "Non-Renewal Notice"), Nationwide informed Sternklar it was not renewing their policy and instead cancelled Zoe's Whole Pet coverage.

87.     Nationwide refused to renew Zoe's coverage or even offer something comparable just when it was needed most.

88.     Sternklar's dog was certainly not Nationwide's top priority.

89.     Sternklar has paid thousands of dollars out of pocket on veterinary care because of Nationwide's decision to cancel that plan after years of being loyal customers who consistently paid their premiums.

90.     Even if Sternklar wanted to stay with Nationwide under a different plan, Nationwide would consider them new customers and would not cover pre-existing conditions, like Zoe's chronic conditions.

91.     Indeed, any medical issues Zoe developed under Nationwide's former coverage would now be considered pre-existing conditions, allowing Nationwide to deny coverage.

92.     Following the cancellation of thousands of Whole Pet plans, Nationwide admitted it was done to maintain long-term profitability.[10]

93.     Following the cancellation of thousands of Whole Pet plans, Nationwide admitted that it "remains strong and stable as one of the largest providers of financial services and insurance products in the U.S."[11]

94.     According to the American Pet Products Association (APPA), Americans spent $38.3 billion on veterinary care in 2023.[12]

---

[10] The Wayback Machine – https://web.archive.org/web/202406171 (last visited May 1, 2025).
[11] *Id*.
[12] https://americanpetproducts.org/industry-trends-and-stats (last visited May 1, 2025).

95.    According to the APPA, veterinary expenditures rose 2% to $39.1 billion.[13]

## V.    CLASS ACTION ALLEGATIONS

96.    This action is brought by Plaintiffs individually and on behalf of classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**The National Class is defined as follows:**

All persons who, within the applicable statute of limitations, had their Whole Pet Plan cancelled by Nationwide (Proposed class representatives: Silberman and Sternklar).

**The Massachusetts Subclass is defined as follows:**

All persons in the state of Massachusetts, who, within the applicable statute of limitations, had their Whole Pet Plan cancelled by Nationwide (Proposed class representatives: Silberman and Sternklar).

97.    Excluded from the Classes are Nationwide, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

98.    **Numerosity.** The Classes consists of hundreds or thousands of consumers of pet insurance and is thus so numerous that joinder of all members is impracticable.

99.    **Ascertainability.** The identities and addresses of all members of the Classes can be readily ascertained from Nationwide's business records.

100.    **Typicalit**y. The claims asserted by Plaintiffs are typical of the claims of members of the Classes inasmuch as Plaintiffs and Class members were deceived by Nationwide's marketing and promotional material in the same manner.

101.    **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the members of the Classes and does not have any interests antagonistic to those of the other members of the Classes. In addition, Plaintiffs have retained attorneys who are knowledgeable and experienced in class and complex litigation.

---

[13] *Id.*

102.     **Commonality and Predominance.** Common questions of law and fact affecting members of the Classes predominate over any individualized issues. These predominating common questions include the following:

a.   Whether Nationwide misrepresented and/or omitted material facts to policyholders;

b.   Whether Nationwide's marketing and promotion of Whole Pet was false, misleading and/or deceptive;

c.   Whether Nationwide's false and misleading advertising enticed class members to act in a manner intended;

d.   Whether Nationwide breached the state consumer protection laws and/or abused its discretion under the policies through its false and deceptive acts, omissions and practices;

e.   Whether Plaintiff and members of the Classes sustained damages as a result of Nationwide's false and deceptive acts, omissions and practices; and

f.   Whether Plaintiff and members of the Classes are entitled to damages, restitution, and/or other relief as a remedy for Nationwide's breaches of state consumer protection laws.

103.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.   The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.   This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

c.   Without a class action, many class members would continue to suffer injury, and Nationwide's violations of law will continue without redress while Defendants continues to reap and retain the substantial proceeds of their wrongful conduct; and

104.     **Manageability.** This action does not present any undue difficulties that would impede its management by the Court as a class action.

### VI.     CLAIMS FOR RELIEF
### <u>COUNT I</u>

**Violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2**
**(On Behalf of Plaintiffs, the National Class, and the Massachusetts Class)**

19

105.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

106.    The Massachusetts' Consumer Protection Act makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…" M.G.L. ch. 93A, § 2.

107.    Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the Massachusetts Consumer Protection Act through its affirmative deceptive and false material omissions on its website, and in policy documents, as discussed above. Specifically, Defendants promised to never drop a pet's coverage based on age.

108.    Defendants intentionally and knowingly engaged in unfair and deceptive practices by dropping policies for older pets and pets with serious health conditions, all while placing the blame on increases in the cost of veterinary care and not their desire to increase profits.

109.    Notably, Nationwide, a Fortune 100 Company, reported a record $60.3 billion in revenue (The Columbus Dispatch) and over a billion dollars in net operating income (Nationwide 2023 Annual Report).

110.    If Plaintiffs knew their policies would be dropped based on their pet's age or serious health condition, they would have looked elsewhere for other options.

111.    Defendants' false, misleading, unfair, and deceptive acts and practices were intentional, knowing, and occurred in the conduct of Defendants' trade and commerce. These bad acts were intended to, and did, result in Defendants profiting from their misleading practices.

112.    Defendants' false, misleading, unfair, and deceptive acts and practices caused Plaintiffs and the Class injury because they paid thousands of dollars in coverage premiums that were ultimately worthless when their pets needed the coverage most.

113.    Plaintiffs and the Class have been injured by Defendants' Consumer Protection Act violations in an amount to be determined at trial. Plaintiffs seek all damages available under M.G.L. ch. 93A, § 2, including actual damages, costs (including reasonable attorneys' fees), and treble damages.

114.    Defendants' conduct affects the public interest as millions of consumers purchase pet insurance and rely on insurance companies' representations—including Nationwide's representations—concerning the pet insurance coverage promised, especially in times of medical need. Plaintiffs, the Class, consumers, and the public have a strong interest in ensuring that companies truthfully disclose factors they consider when cancelling these policies.

115.    Defendants continue to mislead consumers in their marketing for pet insurance and continue to cancel policies for pets in need and deceptively advertise to consumers of healthy young pets.

116.    On or about December 16, 2024, Plaintiffs served a letter pursuant to chapter 93A upon Defendants and thus fulfilled the pre-suit requirements set forth in the statute.

## COUNT II
### Violations of the Other State Statutes Prohibiting Unfair and Deceptive Acts and Practices
### (On Behalf of the National Class)

117.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

118.    Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of subclasses of the other states' residents who formerly purchased Whole Pet insurance plan and was cancelled.

119.    The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and

practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

120.     Defendants' actions violate the Deceptive Trade Practices Acts of the various states, as set out more fully above, by misrepresenting the Whole Pet insurance plans and cancelling without offering similar coverage.

121.     The conduct described herein constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices. The deceptive trade practices acts violated by Defendants are set forth in the next paragraph.

122.     The violations of the various state consumer protection acts (Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code § 8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. § 45.50.471 et seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. § 44-1521 et seq.); Arkansas: the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101 et seq.); Colorado: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110a et seq.); Washington, D.C. the Consumer Protection Procedures Act (D.C. Code Ann. § 28- 3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. § 501.201 et seq. (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. § 817.40 et seq. (West)); Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. § 10-1-370 et seq.); the Fair Business Practices Act (Ga. Code Ann. § 10-1-390 et seq.); and the False Advertising Statute (Ga. Code Ann. § 10-1-420 et seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 et seq.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. § 481A et seq.); Idaho: the Idaho Consumer Protection Act (Idaho Code § 48-601 et seq.); Illinois: the Illinois

Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. § 05/1 et seq. (Smith Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 et seq. (Smith Hurd)); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. § 24-5-0.5-1 et seq. (Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. § 714.16 (West)); Kansas: the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623 et seq.); Kentucky: the Consumer Protection Act (Ky. Rev. Stat. § 367.110 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. § 51:1401 (West)); Maine: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 206 et seq.) and the Uniform Deceptive Trade Practices Act (Me. Rev. Stat. Ann. Tit. 10 § 1211 et seq.); Maryland: the Maryland Consumer Protection Act (Md. Com. Law Code Ann. §§ 13-101 et seq., 14- 101 et seq.); Massachusetts: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Minnesota: the Consumer Fraud Act (Minn. Stat. Ann. § 325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. § 325 F. 67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. § 325D.44); and the Unlawful Trade Practices Act (Minn. Stat. Ann. § 325D.13); Mississippi: the Consumer Protection Act (Miss. Code Ann. §75-24-1 et seq.) and the False Advertising Statutes (Miss. Code Ann. § 97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010 et seq.); Montana: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-101 et seq.); and the Statutory Deceit Statute (Mont. Code Ann. § 27-1-712); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. § 87-301 et seq.); Nevada: the Deceptive Trade Statutes (Nev. Rev. Stat. §§ 598.0903 et seq., 41.600 et seq.); New Hampshire: the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1 et seq.); New Jersey: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1 et seq. (West)); New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. § 57-12-1 et seq.); New York: New York Consumer Protection Act

23

(N.Y. Gen. Bus. Law §§ 349, 350 (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1 et seq.); North Dakota: Deceptive Act or Practice Statutes (N.D. Gen. Stat. § 51-15-01 et. seq.); Ohio: Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01 et seq. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, § 751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, § 51 et seq. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605 et seq.) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. § 616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 § 201-1 et seq. (Purdon); Rhode Island: Consumer Protection Act (R.I. Gen. Law § 6-13.1-1 et seq.); South Carolina: South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10 et seq.); South Dakota: South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. § 37-24-1 et seq.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. § 47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. § 17.41 et seq. (Vernon)); Utah: Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1 et seq.) and the Utah Truth in Advertising Act (Utah Code Ann. § 13-11a-1 et seq.); Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, § 2451 et seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86 et seq.); West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101 et seq.); Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. § 100.18 et seq. (West)); Wyoming: Consumer Protection Act (Wyo. Stat. § 40-12-101 et seq.)) have directly, foreseeably, and proximately caused damages to Plaintiff and proposed class in amounts yet to be determined. 208. As a result of Defendant's violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive

24

acts and practices, Plaintiff and Class members have suffered actual damages for which Defendant is liable.

## COUNT III

**Negligent Misrepresentation**
**(On Behalf of the Massachusetts and National Classes)**

123.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

124.     Defendants were acting at all relevant times in the course of its business.

125.     Defendants negligently misrepresented Whole Pet policies to Plaintiffs and all similarly situated class members as an ongoing viable insurance policy that would continue to provide coverage for the life of their pets so long as premiums were paid.

126.     Defendants negligently misrepresented Whole Pet policies to Plaintiffs and similarly situation class members that cancellations were not due to statewide cancellations or due to the age or health of the pet.

127.     Plaintiff and the class members justifiably and reasonably relied on said representations and omissions in continuing to pay premiums for pet insurance.

128.     As a direct and proximate result of Defendants' negligent representations, misrepresentations, acts and omissions, Defendants have caused Plaintiffs and the putative class to suffer and to continue to suffer actual, consequential, and pecuniary damages.

## COUNT IV
**Fraud**
**(On Behalf of the Massachusetts and National Classes)**

129.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

130.     Defendants were acting at all relevant times in the course of its business.

131.    Defendants made knowingly false representations of material fact to Plaintiffs and all similarly situated class members that

a.    Defendants would continue to provide insurance coverage for their pets so long as consumers paid the premiums;

b.    Defendants would not cancel the pet insurance policy due to age of the pet.

132.    Defendants made said representations with the intent that Plaintiffs and all similarly situated class members would rely on them and purchase pet insurance and continue to pay the premiums.

133.    Plaintiffs and the class members in fact relied on Compass's deceitful and fraudulent misrepresentations to their detriment and damage.

134.    Defendants falsely reported the cancellation of Whole Pet policies throughout various states but indeed continued to sell Whole Pet policies.

135.    Defendants falsely reported that cancellations were not due to age or health of the pets when in fact the cancellations were done when pets needed coverage the most.

136.    As a result of the foregoing, Defendants have caused the class members to suffer and to continue to suffer actual, consequential, and pecuniary damages.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes pray for judgement as follows:

A.    Certifying this action for the class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding Plaintiffs and the Classes compensatory, consequential, statutory, and punitive damages in an amount to be proven at trial;

C.    Awarding Plaintiffs and the Classes pre-judgement and post-judgement interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.      Issuing declaratory and injunctive relief to prevent Nationwide's ongoing deceptive conduct as asserted herein; and

E.      Awarding Plaintiffs and the Classes such other relief as this Court may deem just and proper under the circumstances.

## VIII.    JURY DEMAND

Plaintiffs and the Classes hereby demand a trial by jury as to all issues so triable.


Dated: June 4, 2025                    Respectfully Submitted,


                                       */s/ Paula S. Bliss*
                                       Paula S. Bliss, Esq. (BBO #652361)
                                       Kelly Guagenty, Esq. (BBO #658872)
                                       **Justice Law Collaborative, LLC**
                                       210 Washington Street
                                       North Easton, MA 02356
                                       Tel.  508-230-2700
                                       Fax  385-278-0287
                                       paula@justicelc.com
                                       kelly@justicelc.com


                                       *Counsel for Plaintiffs*